UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
MANSOOR ALAM,                        :   07 Civ. 3540 (LTS) (JCF)
                                     :
            Plaintiff,               :       REPORT AND
                                     :       RECOMMENDATION
    - against -                      :
                                     :
HSBC BANK USA, N.A.,                 :
                                     :
            Defendant.               :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J:

        This is an employment discrimination case brought pro se by
Mansoor Alam against HSBC Bank USA ("HSBC"), his former employer.
Mr. Alam claims he was fired on the basis of his religion and age,
and in retaliation for his objecting to discrimination.  He brings
his claims for religious discrimination under Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and his age
discrimination claim under the Age Discrimination in Employment Act
of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq.  The defendant now
seeks summary judgment on all claims.  For the reasons set forth
below, I recommend that the motion be granted.

Background

    A. Mr. Alam's Employment

        Mr. Alam is a Muslim man who was born on February 10, 1942.
(Complaint at 3; Genuine Issues of Material Facts ("Pl. 56.1
Statement"), ¶ 1).  He was hired by Republic National Bank of New
York in 1998.  (Rule 56.1 Statement of Material Facts ("Def. 56.1
Statement"), ¶ 1; Rebuttal to Statement of Facts by Defendant

1

Paragraph by Paragraph ("Pl. 56.1 Response"), ¶ 1).  He became an employee of HSBC Bank after Republic merged with HSBC on January 1, 2000.  (Def. 56.1 Statement, ¶ 1; Pl. 56.1 Response, ¶ 1).  Mr. Alam worked there until he was terminated in August 2005.  (Def. 56.1 Statement, ¶ 52; Pl. 56.1 Statement, ¶ 1).  He was 63 years old at the time.  (Pl. 56.1 Statement, ¶ 1).

While at HSBC, Mr. Alam performed the job of document examiner.  (Def. 56.1 Statement, ¶ 2; Pl. 56.1 Statement, ¶ 17).  His responsibilities involved comparing an export or import letter of credit to documents submitted by the beneficiary to determine whether there were any discrepancies between the documents and the requirements of the letter of credit.  (Def. 56.1 Statement, ¶ 4; Pl. 56.1 Response, ¶ 4).  Mr. Alam worked in the imports department from 2002 to 2005; according to the defendants, he worked in the exports department prior to 2002, but Mr. Alam denies this.  (Def. 56.1 Statement, ¶ 2; Pl. 56.1 Response, ¶¶ 2, 6).

Both the imports and exports departments are part of HSBC's larger trade services operations ("TSO") department.  (Def. 56.1 Statement, ¶ 2).  The imports department is then subdivided into teams.  (Affidavit of K.P. Choi dated Oct. 30, 2008 ("Choi Aff."), ¶¶ 6-8).  Mr. Alam was supervised at the team level by Ashok Vapiwala in 2001, by Hema Nayampalli in 2002, and by K.P. Choi starting in June 2003.  (Def. 56.1 Statement, ¶¶ 6-7, 12-13; Pl. 56.1 Response, ¶¶ 6-7, 12-13).  Ms. Nayampalli and Mr. Choi both

reported to Sylvia Eustaquio, who was the manager of the entire imports department.    (Def. 56.1 Statement, ¶¶ 7-8; Pl. 56.1 Response, ¶ 8).  Eustaquio in turn reported to Ian Wright, who was the head of the TSO department.   (Def. 56.1 Statement, ¶ 39).

A. <u>Alleged Instances of Discrimination</u>

Mr. Alam claims he was fired on the basis of his age and religion and in retaliation for his complaints about being the target of discrimination.  (Pages attached to Complaint at 1).  He and Aftab Mirza, another HSBC employee in the TSO department, both allege that after Mr. Wright became the head of the TSO department, that department "systematically terminated" older employees and replaced them with younger and less qualified workers.[1]  (Pages attached to the Complaint at 1; Pl. 56.1 Statement, ¶ 9; Affidavit of Aftab Mirza dated Aug. 8, 2008 ("Mirza Aff."), ¶ 4).  The only evidence Mr. Alam presents that any individuals besides himself were subject to discrimination are a conclusory statement by Mr. Mirza (Mirza Aff., ¶ 2) and his own testimony that Mr. Mirza was

---

[1] The defendant argues that the affidavit submitted by Mr. Mirza should be disregarded in its entirety for purposes of this summary judgment motion because Mr. Alam never identified him as a witness in connection with Rule 26 disclosures.  HSBC makes a similar argument with respect to the affidavit of Fazlyul Syed, who also submitted on behalf of the plaintiff.  However, since neither affidavit changes the outcome of my analysis here, I need not resolve this issue.  Likewise, the defendant contends that certain documentary evidence Mr. Alam now presents should be excluded since it was never produced during discovery.  Again, however, I need not address that question because the documents would not alter my ultimate determination.

discriminated against and that another employee, Joyoti Desai, settled an EEOC age discrimination complaint with HSBC. (Pl. 56.1 Statement, ¶¶ 36-37).

Mr. Alam recounts three times when his religion was explicitly raised. First, when he asked Mr. Choi for an alteration to his Friday lunch schedule in order to accomodate time to pray, Mr. Choi refused and told him to "go to Mecca." (Pl. 56.1 Statement, ¶ 27). Second, on July 29, 2005, Mr. Alam heard a manager of a different team, Bruce Sparkes, say "I can't put up with so many Muslims in the department" as Mr. Alam walked by his cubicle.[2] (Pl. 56.1 Statement, ¶ 24; Handwritten note dated July 29, 2005, attached as Exh. BB to Pl. 56.1 Statement). Finally, Mr. Alam stated that on a number of occasions he found photographs of Osama Bin Laden and other Islamic terrorists on his desk. (Pl. 56.1 Statement, ¶ 26). He reported some of the photographs to Mr. Choi, who told him to throw them away. (Deposition of Mansoor Alam dated May 15, 2008 ("Alam Dep."), attached as Exh. C to Declaration of Meredith Friedman dated Oct. 31, 2008, at 10-12).

Mr. Alam also describes one instance where the topic of his

_____

[2] Mr. Alam also presents the testimony of Fazlul Haq Syed claiming that when Mr. Syed worked with Mr. Sparkes in a prior job at Barclay's Bank, Mr. Sparkes had a "habit of discriminating against ethnic and religious minorities." (Affidavit of Fazlul Haq Syed dated Nov. 19, 2008, attached as Exh. DD to Pl. 56.1 Statement). This evidence of Mr. Sparkes' past conduct and character, however, is not relevant here, and, in any event, it is entirely conclusory.

age was explicitly raised.  When he was having trouble moving boxes of old files, Mr. Choi allegedly told Mr. Alam that "we need young and strong people here, dead wood is good for furnace only." (Pl. 56.1 Statement, ¶ 28).

Mr. Alam refers as well to a number of more general instances of friction which he alleges were prompted by discriminatory motives.  At one point, he was given a desk with a communal printer on it; when his desk was later switched, the printer was moved elsewhere.  (Pl. 56.1 Statement, ¶ 19; Pl. 56.1 Response, ¶ 64; Pages Attached to Complaint at 1).  He claims that the printer was meant to distract him from his work, and that it regularly brought noisy and germ-infested coworkers to his work space.  (Pl. 56.1 Statement, ¶ 19; Pl. 56.1 Response, ¶ 64; Pages Attached to Complaint at 1).  He claims that no one else in the department had a printer on his or her desk.  (Pl. 56.1 Statement, ¶ 19; Pl. 56.1 Response, ¶ 64; Pages Attached to Complaint at 1).  When his supervisors noted an increase in the number of errors he made, he attributed this in part to the distractions caused by the printer. (Memorandum of Mansoor Alam dated Feb. 24, 2005, attached as Exh. X to Pl. 56.1 Statement, at 1).

Mr. Alam also cites an instance when Mr. Choi mocked him in front of co-workers for being in the bathroom too long.  (Pl. 56.1 Statement, ¶ 25).  At some prior point, the plaintiff was barred from visiting another floor in the building, the fourteenth floor,

5

and was told to check in with Mr. Choi before leaving his desk. (Pl. 56.1 Statement, ¶¶ 25, 29-31).

According to Mr. Alam, he was immediately replaced by a younger, non-Muslim employee following his termination.  He also asserts that the department hired 5 other employees after his departure, never offering him any of these job opportunities, and that the department advertised two positions with titles identical to his soon after he left.

C.   Alleged Legitimate Reasons for Termination

By contrast, the defendant asserts that it had valid grounds for terminating the plaintiff.  First, HSBC claims that a combination of a need to downsize the TSO department and Mr. Alam's poor annual review score led to his termination.  In HSBC's annual reviews, employees were rated in a number of areas on a scale of 1 to 5, with 1 being the best score and 5 being the poorest.  After a history of generally receiving overall review scores of "3," the plaintiff received a score of "4" for his performance in 2004.[3] (Performance Reviews for 1999-2003, attached as Exh. L to Pl. 56.1 Statement; Associate Performance Management Performance Plan and Performance Review for Mansoor Alam for 2004 ("2004 Alam Review"),

---

[3] Mr. Alam alleges that after he complained to the EEOC about being the target of discrimination, papers submitted by HSBC were doctored to make it appear that his overall review score for 2001 was also a 4, when in fact it was a 3.  This claim is irrelevant here, as the reduction in force is alleged to have been based solely on performance for the year 2004, not on historic performance.

attached as part of Exh. B to Affidavit of Ian Wright dated Oct.
31, 2008 ("Wright Aff."), at 3).   Mr. Alam was one of seven
individuals in the TSO department who received an overall score of
"4" in the 2004 review.   (Wright Aff., ¶ 13; E-mail from Ian L.
Wright dated July 13, 2005 ("Wright 7/13/05 E-mail"), attached as
Exh. J to Pl. 56.1 Statement).   After losing several major
accounts, Mr. Wright determined that the TSO department needed to
reduce its staff by five people in order to improve its efficiency.
(Wright Aff., ¶¶ 5-10, 12, 19; Wright 7/13/05 E-mail).   Three of
the seven individuals with "4" reviews were in the imports
department, and Mr. Wright asked Ms. Eustaquio to choose which two
of the three individuals would be terminated.   Mr. Alam was one of
the two she chose.   The defendant argues that the department
determined which of the seven would not be terminated based on who
had shown the most improvement since the review.   (Wright 7/13/05
E-mail; E-mail of Sylvia Eustaquio dated April 12, 2005 ("Eustaquio
4/12/05 E-Mail"), attached as Exh. D to Wright Aff.; Email of Bruce
Sparke dated July 25, 2005 ("Sparke 7/25/05 E-Mail"), attached as
Exh. C to Wright Aff.).   The plaintiff points out that the one 4-
rated imports employee who retained her job was younger than he was
and was not Muslim.   (Pl. 56.1 Statement, ¶¶ 11, 17; Adverse Impact
Report dated July 25, 2005 ("Adverse Impact Report"), attached as
Exh. F to Wright Aff., at 2).

    HSBC also asserts that Mr. Alam's poor reviews were justified.

7

Mr. Choi and Ms. Eustaquio explain that he was often visiting friends on another floor or running personal errands when he should have been working. (Choi Aff., ¶¶ 11-21; Affidavit of Sylvia Eustaquio dated Oct. 29, 2008 ("Eustaquio Aff."), ¶¶ 15-18, 21-23; Wright Aff., ¶ 40; E-mail of Ian Wright dated March 7, 2005 ("Wright 3/7/05 E-mail"), attached as Exh. I to Eustaquio Aff., at 1-2). In 2004, he also began making frequent errors and was not willing to help others on his team. (Choi Aff., ¶¶ 30, 32-35; Eustaquio Aff., ¶¶ 8, 10-11, 29-30, 37; Wright 3/7/05 E-mail at 2). Mr. Choi and Ms. Eustaquio also recounted an incident in which, when asked why he was absent from his desk, Mr. Alam became angry and started screaming at Ms. Eustaquio.

The plaintiff denies that he was often away from his desk and claims that the adverse comments in his 2004 annual review were false. He also claims that he was entitled to a "360 review"[4] upon request, but that HSBC refused to perform one. In addition, Mr. Alam contends that the TSO department had not in fact lost business at the time he was terminated. He provides website printouts to show that HSBC Group is a growing company that had 260,000 employees as of February 5, 2006 (MSN Search dated Feb. 5, 2006, attached as Exh. H to Pl. 56.1 Statement) and 315,000 employees by

_____

[4] According to Mr. Alam, a "360 review" is a review in which an employee's bosses, co-workers, subordinates, clients, and others who interact with the employee are all interviewed for their opinion about the person's job performance. (Pl. 56.1 Statement, ¶ 14).

January 3, 2008.   (HSBC website printout dated Jan. 3, 2008, attached as Exh. I to Pl. 56.1 Statement).   Moreover, according to the plaintiff, HSBC listed job openings for trade services operations specialists soon after his termination. (Career Builder job listing printed on Dec. 3, 2005, attached as Exh. C to Pl. 56.1 Statement).

D.   Procedural History

Mr. Alam filed a charge of discrimination with the EEOC on November 1, 2005, and received notice of his right to sue from the EEOC on March 14, 2007.   (Complaint at 4-5; Notice of Right to Sue dated March 12, 2007, attached to Complaint).   The plaintiff commenced the current action on May 4, 2007.   Following the completion of discovery, the defendant moved for summary judgment on all claims.

Discussion

A.   Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999).   The

9

moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The opposing party then must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995).  But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative.  Id. at 249-50.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities

Service Co., 391 U.S. 253, 288 (1968)).

Where a litigant is pro se, his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); accord Gittens v. Garlocks Sealing Technologies, 19 F. Supp. 2d 104, 110 (W.D.N.Y. 1998).

In addition, the court's review of the record is limited to facts that would be admissible at trial.  Rule 56(e) states that affidavits in support of or against summary judgment shall "set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(e).  Accordingly, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

B.   Analytic Framework of Title VII and the ADEA

The plaintiff here claims the defendant violated both Title VII and the ADEA in firing him.  Claims of discrimination under Title VII are analyzed in accordance with the three-part framework

11

established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This same framework applies to employment discrimination claims under the ADEA. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 612 (1993) (finding McDonnell Douglas analysis to apply in ADEA cases); Abrahamson v. Board of Education, 374 F.3d 66, 71 (2d Cir. 2004) (same).

In the first stage of the McDonnell Douglas analysis, the plaintiff must establish a prima facie case of discrimination by showing that (1) he is within a protected group, (2) he was qualified for the job at issue, (3) he was subjected to an adverse employment action, and (4) this action occurred under circumstances giving rise to an inference of discrimination. McDonnell Douglas, 411 U.S. at 802; Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). One way for a plaintiff to establish an inference of discrimination is to show that the employer "treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island Rail Road, 230 F.3d 34, 39 (2d Cir. 2000). Because an employer engaged in discrimination is unlikely to leave a "smoking gun," Forsyth v. Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005), a plaintiff usually must rely on the "cumulative weight of circumstantial evidence" when proving bias. Walker v. New York City Department of Corrections, No. 01 Civ. 1116, 2008 WL 4974425, at *10 (S.D.N.Y. Nov. 19, 2008) (quoting Rosen v. Thornburgh, 928 F.2d 528, 533 (2d

Cir. 1991)).

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence "that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). Notwithstanding this intermediate shift of the burden of production, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253; see also St. Mary's Honor Center, 509 U.S. at 507.

Accordingly, if the defendant provides evidence of legitimate nondiscriminatory reasons for its action, the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. Specifically, to successfully oppose a summary judgment motion there must be "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false," Gilligan v. City of Moreau, No. 00-7109, 2000 WL 1608907, at *3 (2d Cir. Oct. 25, 2000) (quotation marks and citation omitted), and a showing "that the defendant's employment decision was more likely than not based in whole or in part on

discrimination." Paul v. Wyeth Pharmaceuticals, Inc., No. 08-1472, 2009 WL 1210475, at *1 (2d Cir. May 5, 2009) (quoting Stern v. Trustees of Columbia University in the City of New York, 131 F.3d 305, 312 (2d Cir. 1997)). The issue for the court "is not whether the employer reached a correct conclusion" in taking the employment action, but "whether the employer made a good-faith business determination." Baur v. Rosenberg, Minc, Falkoff & Wolff, No. 07 Civ. 8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008). Under Title VII, the plaintiff must show that discrimination was a "motivating factor" in the employer's decision; under the ADEA, the discrimination must have been a "'but-for' cause" of the employer's decision. Gross v. FBL Financial Services, Inc., ___ U.S. ___, ___, 129 S. Ct. 2343, 2349, 2350-51 (2009).

   1. Prima Facie Case

   The parties dispute whether Mr. Alam has presented a prima facie case of discrimination to the Court. It is clear that two of the requirements have been fulfilled: he is a member of two protected groups and was subjected to an adverse employment action when he was fired. The defendant disputes that Mr. Alam was qualified for his job, arguing that his score of "4" on his 2004 review shows otherwise. However, insufficiencies in Mr. Alam's performance do not make him unqualified for purposes of this prima facie analysis. See Wooten v. Reconstruction Home, Inc., No. 5:02-CV-01278, 2005 WL 1502149, at *5-6 (N.D.N.Y. June 24, 2005)

14

(finding a plaintiff "need not show perfect performance or even average performance" to prove a prima facie case, but merely "that [he] possesses the basic skills . . . necessary for the position"). Having performed his job for many years, Mr. Alam clearly had the basic qualifications to fulfill his position.

The principal dispute is whether there is evidence of a causal connection between Mr. Alam's protected status and his firing. The evidence necessary to make a prima facie showing is minimal. Generally, however, stray remarks by individuals uninvolved in decision-making, or by decision-makers unrelated to the decision-making process are not given great weight. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001); Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). Thus, the comments by Mr. Sparke and the photos left anonymously on Mr. Alam's desk do not support the plaintiff's claims. Conversely, the one age-related remark and the one religion-based comment made by Mr. Choi are relevant, since Mr. Choi was heavily involved in writing the review that served as the basis for Mr. Alam's termination.[5] Here, the plaintiff's testimony

---

[5] Mr. Alam has also alleged a number of other conflicts with Mr. Choi. For example, Mr. Alam was barred from visiting the fourteenth floor; he had to inform Mr. Choi when he left his desk; and Mr. Choi once made embarrassing comments about the length of time Mr. Alam spent in the bathroom. In addition, Mr. Alam claims more general acts of discrimination, such as in the placement of a printer on his desk. There is no evidence, however, that any age-related or religiously-based animus motivated these conflicts. Thus, they are not relevant to the determination of whether the plaintiff has presented a prima facie case.

regarding comments made by Mr. Choi on two occasions, as well as the fact that the two of the seven employees who were not fired were younger than Mr. Alam and non-Muslim, might barely suffice to allow an inference of discrimination.  Assuming this to be the case, I will proceed to the next step in the analysis.

## 2.  Legitimate Business Reasons for Termination

Once the plaintiff presents a prima facie case, the burden shifts to the defendant to provide evidence of a nondiscriminatory reason for the adverse action.  The defendant here has plainly done so.  HSBC has presented evidence that it fired Mr. Alam due to a need to downsize the department in response to reduced business in combination with the low annual review score Mr. Alam received in 2004.  A reduction in force may be a legitimate reason to dismiss employees, as long as the company chooses which employees to dismiss on a non-discriminatory basis.  See Maresco v. Evans Chemetics, 964 F.2d 106, 111 (2d Cir. 1992).  Here, the annual review scores were such a legitimate basis; poor employee performance is a proper ground for selecting employees to dismiss in a reduction in force.  The defendant provides documentation of both the scores of the relevant employees and communications discussing the manner of determining which employees to terminate. (Adverse Impact Report; Associate Performance Management Performance Plan and Performance Review for 2004 for Veronica Maloney, Aftab Mirza, Mansoor Alam, Wilber Mezzich, Ernst H.

16

Martelly, Domingo L. Gonzalez, and Sandy M. Wu, attached as Exh. B to Wright Aff.; Sparke 7/25/05 E-Mail; Eustaquio 4/12/05 E-Mail; Wright 7/13/05 E-mail).   In addition, HSBC has presented evidence that the poor review was properly based on Mr. Alam's performance. For example, HSBC has presented testimony that, in fact, Mr. Alam began making errors more frequently and was absent from his desk more often in the time period covered by the 2004 review.   (Choi Aff., ¶¶ 11-21, 30, 32-35; Eustaquio Aff., ¶¶ 8, 10-11, 15-18, 21-23, 29-30, 37; Wright Aff., ¶ 40; Wright 3/7/05 E-mail at 1-2).   In addition, the annual review was approved by both Mr. Choi and Ms. Eustaquio, and Ms. Eustaquio, who is not alleged to have been biased, specifically made negative comments about Mr. Alam's performance in the review.   (Eustaquio Aff., ¶¶ 32-33; 2004 Alam Review).

        3. <u>Pretext</u>

    The burden therefore shifts back to Mr. Alam "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."   <u>Burdine</u>, 450 U.S. at 253.   Mr. Alam's evidence fails to support a finding that he was fired for any reason other than his poor performance review in 2004 and HSBC's need to reduce its staff.

    The plaintiff argues that the reduction in force itself was unnecessary.   He argues that since his termination, HSBC has

substantially expanded its staff; that it immediately replaced him with a younger, non-Muslim employee after his termination; that it posted two job openings with titles identical to his soon after his termination; and that it has since hired five new employees in the Trade Services department without offering any of the positions to him.

First, Mr. Alam claims that HSBC Bank increased its staff from 260,000 employees to 315,000 employees between February 2006 and January 2008.[6]  However, the expansion of HSBC Bank as a whole does not prove that a reduction in force within a specific department was unnecessary.  See Gaffney v. Department of Information Technology and Telecommunications, 536 F. Supp. 2d 445, 462 (S.D.N.Y. 2008) (finding that "[b]usiness decisions to hire employees to fulfill specific needs in one area while downsizing another area during a reduction in force [are] generally not evidence of discrimination or pretext").  The defendants claim only that the TSO department had encountered setbacks and thus needed to reduce its staff.  (Wright Aff., ¶¶ 5-10).

Second, Mr. Alam asserts that upon his termination, HSBC

_____

[6] Mr. Alam's proof of this alleged increase in employment levels consists of a 2006 printout of an MSN web search for "HSBC of total employees" [sic] that returned sentence snippets including a statement that may be the number of employees HSBC had as of that time, and a 2008 printout of a "fast facts" page from the HSBC website.   Both the admissibility of this evidence and the interpretation that Mr. Alam gives it are dubious.  However, these issues need not be addressed, since, as discussed above, the evidence would not support the plaintiff's claim in any event.

immediately replaced him with a younger, non-Muslim employee named
Marvin Lee.  (Pl. 56.1 Statement, ¶ 2).  His only evidence is his
own testimony and that of Mr. Mirza, the  co-worker who was laid
off at the same time.  (Pages Attached to Complaint at 1; Pl. 56.1
Statement, ¶ 2; Alam Dep. at 14-15; Mirza Aff., ¶ 3).  Yet, Mr.
Alam admitted in deposition that his own knowledge that Mr. Lee
replaced him is based on a statement by a co-worker.  (Alam Dep. at
15).  The plaintiff also asserts, with no supporting evidence, that
it was "the practice of HSBC" to hire younger employees, fire older
employees in other parts of the bank, and then transfer the younger
employees in to refill the now-vacant positions.  (Pl. 56.1
Response, ¶ 58).

The defendant counters that Mr. Lee had actually been a
negotiator in the imports department "as far back as 2002."  (Def.
56.1 Statement, ¶ 58; Wright Aff., ¶ 29).  It submits a report
prepared in connection with the 2005 reduction in force that lists
Mr. Lee as an employee with the same job title as Mr. Alam, and
seems to indicate that Mr. Lee began working at HSBC Bank in 1990
and started in the TSO department in 2002.  (Adverse Impact Report
at 2).  The defendant represents that neither Mr. Lee nor anyone
else was hired to replace Mr. Alam.  Instead, the work done by Mr.
Alam and the other laid off employees was redistributed to other
employees in the department.  (Def. 56.1 Statement, ¶ 58; Wright
Aff., ¶ 29).

While a court must interpret all evidence in favor of the plaintiff, it need not blindly accept the plaintiff's testimony where that testimony is largely unsubstantiated and is contradictory or incomplete. See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Civ. 2005). Mr. Alam's claim that Mr. Lee replaced him is conclusory, and it seems clear that Mr. Alam's testimony here is not based on personal knowledge. Mr. Mirza's testimony, which echoes Mr. Alam's claims (Mirza Aff., ¶¶ 3-4), is likewise conclusory. In addition, there is no evidence at all to support Mr. Alam's theory that HSBC hired Mr. Lee years earlier with the intent to eventually fire an older worker and replace that person with Mr. Lee. Such a plot would have had to begin back in at least 2002, if not in 1990. In sum, Mr. Alan has failed to produce sufficient evidence to support his claims, so they must be rejected.

Third, while Mr. Alam contends that the addition of five employees to the TSO department and the online listing of a position similar to his further supports his contention that his firing was discriminatory, he does not present any evidence to contradict the explanation the defendant provides for those actions. HSBC explains that two of the five new additions were in fact transfers or visiting employees from other offices within the company; the remaining three employees were hired to replace individuals who retired or left the department after the reduction in force was completed. The job listing Mr. Alam presents was for

20

one of these positions, and nobody was ever hired to fill the listed positions.  (Wright Aff., ¶¶ 33-36; E-mail exchange between Ian L. Wright and Michael Papadatos, attached as Exh. G to Wright Aff.).  Without any evidence that the defendant's explanation is false, it must be accepted as true.

Finally, Mr. Alam's claim that HSBC further discriminated against him by failing to offer him any of these five positions is also misguided.  Once again, the company was not obligated to find Mr. Alam a replacement job as long as its refusal to relocate or rehire him was based on non-discriminatory reasons.  See Kalra v. HSBC Bank USA, N.A., 567 F. Supp. 2d 385, 400 (E.D.N.Y. 2008) ("Defendant was under no obligation to provide plaintiff with another position after terminating him for performance and behavioral issues."); Faldetta v. Lockheed Martin Corp., No. 98 Civ. 2614, 2000 WL 1682759, at *10 (S.D.N.Y. Nov. 9, 2000) (finding that under the ADEA, defendant employer "is not obligated to find another position for an employee who is about to be terminated, even if he is qualified for that position").

Here again HSBC had legitimate reasons for not offering Mr, Alam any of the five positions.  Two were simply internal transfers, not new hires, and were both hired over a year after Mr. Alam's termination. (Affidavit of K.P. Choi dated Dec. 29, 2008, ¶¶ 2-3, 6).  One hire was to replace a retiring manager in a position of greater responsibility than the one Mr. Alam left. (Wright Aff., ¶ 32).  Another hire was for an administrative

position with far less responsibility than Mr. Alam's old job.
(Wright Aff., ¶ 34).   The fifth individual was a visiting
"International Manager who began his two-year temporary stay in the
United States working for Trade Services as manager of the Exports
Department in January 2008," not a new hire.  (Letter of Meredith
L. Friedman dated May 16, 2008, attached as Exh. A to Declaration
of Meredith Friedman dated Dec. 29, 2008, at 2).  In addition, the
defendant did not choose to rehire Mr. Alam for the same reason it
chose to include him in the RIF layoffs: his poor 2004 performance
review.  There is no evidence that the defendant's proffered reason
for choosing not to rehire Mr. Alam is a mere pretense for
discrimination.

        Not only does Mr. Alam fail to present sufficient evidence to
show that HSBC terminated him on a pretextual basis, he also fails
to connect the alleged instances of discrimination with his
termination.  The employment decisions in this case were made
almost entirely by Mr. Wright and Ms. Eustaquio, and Mr. Alam does
not allege that any of the incidents involving religious or age-
related discrimination involved either of these individuals.  Mr.
Choi, one of two people involved in giving Mr. Alam a poor 2004
review, did make two potentially discriminatory comments.  And, to
be sure, Mr. Alam's allegations tend to show that Mr. Choi may have
been a difficult boss and that Mr. Alam and Mr. Choi had some
interpersonal conflict.  However, in the face of evidence presented
by HSBC and Mr. Choi's attenuated role in Mr. Alam's termination,

the plaintiff's claims are insufficient to allow a reasonable factfinder to find that HSBC's business rationale was false.

   C. <u>Retaliation Claim</u>

  Mr. Alam also claims he was subject to retaliation by HSBC. Though it is not entirely clear, he seems to claim that he was subjected to improper retaliation for complaining that his annual review was unfair and inaccurate, and for complaining generally about discrimination.   (Pages attached to Complaint at 1-2). Specifically, he alleges that when he aired his complaints to Mr. Wright, Mr. Wright told him to look for another job, and that "others warned [him] of grave consequences and that is exactly what happened."  (Pages attached to Complaint at 2).   In other words, Mr. Alam asserts that after he objected to discriminatory treatment and a poor review written for discriminatory reasons, HSBC retaliated by laying him off.   He also claims that after his layoff, he was denied three months of paid COBRA health benefits for himself and eighteen months of COBRA benefits for his dependents that he was entitled to under an HSBC policy instituted a month or so before his termination.   (Pl. 56.1 Statement, ¶ 21-22; Operational Circular Human Resources HSBC-North America Severance Pay Plan dated June 8, 2005 ("Severance Policy"), attached as Exh. AA to Pl. 56.1 Statement).

  According to Mr. Wright, he responded to Mr. Alam's complaints about his current job by simply suggesting "that if [Mr. Alam] was unhappy with his position he was free to post for another position

within HSBC," and "clarified that there were several open job requisitions within HSBC and . . . encouraged him to review them." (Wright Aff., ¶¶ 44-45).

Retaliation claims are evaluated under the <u>McDonnell Douglas</u> analysis discussed above.  <u>See</u> <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 172-73 (2d Cir. 2005) (applying <u>McDonnell Douglas</u> to Title VII retaliation claims); <u>Jetter v. Knothe Corp.</u>, 324 F.3d 73, 75 (2d Cir. 2003) (applying <u>McDonnell Douglas</u> to ADEA retaliation claims).  In order to establish a prima facie case of retaliation under Title VII or the ADA, a plaintiff must show that (1) the employee was engaged in an activity protected by the statute, (2) the employer was aware of that activity, (3) an adverse employment action occurred, and (4) a causal connection existed between the protected activity and the adverse employment action.  <u>Matya v. United Refining Co.</u>, No. 07-2618-CV, 2009 WL 1057619, at *1 (2d Cir. April 21, 2009) (discussing Title VII); <u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 234 (2d Cir. 2000) (quoting <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 159 (2d Cir. 1999)) (discussing ADEA).  An adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 68 (2006) (quotation marks and citation omitted).

1.  <u>Retaliation by Firing</u>

Mr. Alam's pleadings do not make clear the basis of the purported retaliation or the exact ways in which HSBC retaliated. (Pages Attached to Complaint at 1; Pl. 56.1 Statement, ¶¶ 20-23). But if, in fact, Mr. Alam is claiming that HSBC retaliated in response to his complaints that negative comments in his annual review were religiously motivated or age-related, then his complaining was a protected activity.  And, since those complaints were made to Mr. Wright, HSBC knew about that activity.  Of course, his termination was an adverse employment action.

Mr. Alam has not, however, presented sufficient evidence to show a nexus between any discrimination-related complaint he made to Mr. Wright and his eventual termination.  Indeed, he provides no proof other than his own conclusory testimony to support a finding of retaliatory firing.   To be sure, when direct evidence of retaliation is absence, temporal proximity can often be used to indirectly establish a nexus between a protected action and the employer's response.  Here, Mr. Alam's 2004 review was completed in early February 2005.  After Mr. Alam commented on his review in writing and met with members of the Human Resources Department, he had a final discussion of his review with Mr. Wright on March 30, 2005.  (2004 Alam Review; E-mail of Ian L. Wright dated April 5, 2005, attached as Exh. J to Wright Aff.).  Yet, Mr. Alam was not terminated until the beginning of August, over four months later, a temporal gap too wide to bridge.  <u>See, eg.</u>, <u>Chamberlin v.</u>

25

Principi, 247 Fed. Appx. 251, 254 (2d Cir. 2007) (finding five-month interval too long to establish nexus); Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (finding three-month interval likely insufficient to establish causation); Snyder v. Advest, Inc., No. 06 Civ. 1426, 2008 WL 4571502, at *5 (S.D.N.Y. June 8, 2008) (finding nearly five-month gap too long); Cobian v. New York City, No. 99 Civ. 10533, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000) (finding four month gap too long)).  In short, Mr. Alam has failed to establish a prima facie case of retaliation.

Moreover, even if Mr. Alam were to establish a prima facie claim, HSBC has provided evidence of legitimate business reasons, discussed above, for terminating the plaintiff, and Mr. Alam cannot show that those reasons were a mere pretext for a retaliatory termination.

### 2.  Retaliation by Denying COBRA Coverage

Mr. Alam's claim that HSBC retaliated by denying him COBRA coverage also fails.  HSBC did, indeed, institute a policy providing COBRA coverage as part of severance packages that became effective on July 1, 2009.  (Severance Policy).  However, that policy explains that in some cases, employees would be required to sign a release in order to be entitled to the COBRA coverage, as well as the rest of the severance package.  (Severance Policy). Mr. Alam was, in fact, presented with such a release.  (Pl. 56.1 Statement, 35; Voluntary Separation Agreement Release and Waiver dated Aug. 4, 2005 ("Waiver"), attached as Exh. KK to Pl. 56.1

Statement).  However, there is no evidence that he signed it, and he does not claim to have done so.  (Waiver at 4 (unsigned)). Thus, there is no evidence that HSBC failed to apply their severance policy as written, let alone that it failed to do so for retaliatory reasons.[7]

---

[7] Mr. Alam's complaint also vaguely references a claim in this case for intentional infliction of emotional distress.  This pleading does not make clear which conduct is the basis of this claim, though the plaintiff's papers on the current motion suggest that it stems from the placement of a printer on his desk.  (Pl. 56.1 Statement, ¶ 19).  He argues that the noise from this printer, as well as the germs brought to his cubicle when co-workers came to pick up their prints, caused this distress.  (Pl. 56.1 Statement, ¶ 19).  Intentional infliction of emotional distress is a state law tort with four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996); accord Silver v. Kuehbeck, No. 05 Civ. 35, 2005 WL 2990642, at *7 (S.D.N.Y. Nov. 7, 2005); Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).  Here, Mr. Alam stumbles on the very first hurdle, since he has not alleged the type of egregious conduct that would give rise to a claim.  14 N.Y. Prac., New York Law of Torts § 1:38 ("It is well established that mere threats, annoyance or other petty oppressions, no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress."); see also Stauber v. New York City Transit Authority, 10 A.D.3d 280, 781 N.Y.S.2d 26 (1st Dep't 2004) (finding no extreme and outrageous conduct where city bus driver, following employer's policy, refused to let other passengers help a woman in a wheelchair off the bus or to help her himself when the wheelchair lift malfunctioned, and was rude and used profanity); Cunningham v. Security Mutual Insurance Co., 260 A.D.2d 983, 689 N.Y.S.2d 290 (3d Dep't 1999) (finding no extreme and outrageous conduct where property insurer failed to timely compensate insured for house fire, leaving insured homeless and without adequate living expenses for over a year, and accused her of committing arson and committing false statements under oath); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333 (S.D.N.Y. 2000) (finding no extreme and outrageous conduct where African-American shopper alleged police singled her out as suspected of using stolen credit card on basis of racial profiling); Clark v. Elam Sand and Gravel, Inc., 4 Misc. 3d 294, 777 N.Y.S.2d 624 (Sup. Ct.

For the reasons set forth above, I recommend that the defendants' motion for summary judgment be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, Room 755, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           August 13, 2009

Copies mailed this date to:

Mansoor Alam
32 Clinton Street
Farmingdale, New York 11735

---

Ontario Co. 2004) (finding no extreme and outrageous conduct where employee alleged that employer installed telephone and video surveillance equipment in workplace without employee's knowledge).

28

Meredith L. Friedman, Esq.
Scott D. Miller, Esq.
HSBC Bank USA, N.A.
452 Fifth Avenue, 7th Floor
New York, New York 10018